IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                Cr. No. 17-2190 KG

MANUEL ROMERO, JR.,

    Defendant.

MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion to Suppress Evidence and Statements. (Docs. 20, 22). The United States has responded, (Doc. 25), and Defendant has replied, (Doc. 31). On March 29, 2018, the Court held an evidentiary hearing. Assistant United States Attorneys John Balla and Richard Williams appeared for the United States, and Assistant Federal Public Defenders Jane Greek and Elyse Battaller-Schneider appeared with Defendant Manuel Romero, Jr. Having considered the arguments of counsel, the applicable law and the evidence, the Court denies the Motion.

*I. Procedural Background*

This case originated on August 16, 2017, when the United States filed an Indictment charging Mr. Romero in Count 1, felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1), and in Count 2, knowing possession of a stolen firearm, a violation of 18 U.S.C. § 922(j). As described above, Mr. Romero filed a motion to suppress evidence and statements. The evidence includes the firearm that was seized from Mr. Romero's possession on April 29, 2017, by Las Cruces Police Officer, Matthew Dollar.

Officer Dollar was the only fact witness at the evidentiary hearing on the motion to suppress. The Court admitted exhibits from both parties, and heard oral argument.

II. *Findings of Fact*

On Friday April 29, 2017, Officer Dollar was on routine patrol in an area he described as "District 6," in Las Cruces, New Mexico. As of that date, Officer Dollar had been an officer with the Las Cruces Police Department (LCPD) for approximately two and one-half years. Also, as of that date, Officer Dollar had been patrolling District 6 for approximately one-half to two years. Officer Dollar described his training to become a LCPD officer, including the LCPD academy where he studied law and investigations.

At approximately 5:30 p.m., Officer Dollar was patrolling District 6 near Del Rey Boulevard and Highway 70. As he drove past Emmanuel Lutheran Church, he observed an adult male standing at the front entry area of the church and peering into the church through a window. Officer Dollar is familiar with the Emmanuel Lutheran Church, having passed it 50-75 times each week while on patrol. He never sees cars at the church at this time of day. Several days before, Officer Dollar and other LCPD officers had received information regarding issues at area churches that had been vandalized and that items had been stolen. Government Exhibit 2. As a result of his observation and prior reports of vandalism and theft, Officer Dollar turned around and drove toward the church.

The Court admitted at the evidentiary hearing Government Exhibit 1, an excerpt of an audio-video recording from Officer Dollar's lapel camera.[1] The recording speaks for itself. The Court notes from Government Exhibit 1 that the following occurred:

---

[1] The entire lapel camera recording is several minutes in duration. However, for purposes of the evidentiary hearing on the motion to suppress, the parties agreed the exhibit includes only two minutes and twenty-two seconds, ending at 00:02:22. Though not depicted in this excerpt,

Officer Dollar parked in the church parking lot and approached the church entry area on foot. He turned a corner into the entry courtyard where a male figure wearing a backpack is visible crouching against the exterior church wall with his back to Officer Dollar. The Court also notes the following verbal exchange then took place:

| | |
|---|---|
| Officer Dollar: | Police Department. Hey, what's up man? How are you? |
| Mr. Romero: | Pretty good. |
| Officer Dollar: | What's going on? |
| Mr. Romero: | I'm getting some water and charging my phone. |
| Officer Dollar: | What's that? |
| Mr. Romero: | I'm getting some water and trying to charge my phone. |
| Officer Dollar: | You don't have any weapons or anything on you, do you? |
| Mr. Romero: | No, I got a --. |
| Officer Dollar: | Don't reach for it. |
| Mr. Romero: | Okay. |
| Officer Dollar: | Set that down. Let me pat you down real quick. |
| Mr. Romero: | Oh, man. Why? |
| Officer Dollar: | Listen to me. This can go smoothly or it can go rough for you. I suggest that you go with what I'm asking you, alright, or I'll charge you with resisting, obstructing. It's your choice. |
| Mr. Romero: | Are you going to give me a ticket or what? |
| Officer Dollar: | I'm going to put you in handcuffs and take you to jail -- |
| Mr. Romero: | I don't want to go to jail. |

At this point in the encounter, Officer Dollar drew his taser and pointed it at Mr. Romero.

| | |
|---|---|
| Officer Dollar: | --or we can go this route. Put it down. Put your hands on the wall. |
| Mr. Romero: | Can I take this off? |
| Officer Dollar: | No, don't reach for anything. |
| Mr. Romero: | Ah, man. Why do you want to (unintelligible) ? |
| Officer Dollar: | Hey, you're at a church. You don't belong here right now. Okay? It can go one of two ways. |
| Mr. Romero: | Why do you want to take me to jail? |
| Officer Dollar: | You can go to the ground or you can comply. |
| Mr. Romero: | Please don't tase me. |
| Officer Dollar: | Go to the ground. |
| Mr. Romero: | I don't want to go to get tased. |

---

Officer Dollar seized the firearm during this pat-down and that gives rise to the current federal charge.

3

Government Exhibit 1; Doc. 43. As is clear from the video exhibit, Mr. Romero was holding a cell phone in one hand and a water bottle in the other. When Officer Dollar pointed his taser, Mr. Romero put the items on the ground, turned toward the wall, then began to take off his back pack. Mr. Romero laid on the ground as Officer Dollar commanded "Go to the ground." Officer Dollar then began a pat down search, locating a knife.

Officer Dollar testified that when he initially approached Mr. Romero, he noticed a "pocket clip" consistent with a clip of a folding pocket knife on Mr. Romero's right side near his hip and waist. Officer Dollar also testified that he noticed a bulge on Mr. Romero's right bicep that he described as a "linear bulge" that he also suspected was a knife. He further testified that, in his experience, he has encountered multiple people with knives hidden under clothing.

Officer Dollar asked Mr. Romero whether he had any weapons, stating this question is "standard." Tr. at 28.[2] Mr. Romero quickly reached toward his pocket where Officer Dollar had observed the pocket clip located. Officer Dollar interpreted this as a response to his question. He considered this a "safety problem" because Mr. Romero's intentions remained unknown. Tr. at 29. As a result, and for his own safety, he instructed Mr. Romero to turn around for a pat down search.

He also noted Mr. Romero's demeanor, which Officer Dollar interpreted to be "upset" and "aggravated." Officer Dollar also noted that Mr. Romero kept "dropping his hands to his midline" to the area where the knife was located. He determined Mr. Romero was resisting and failing to obey his commands.

III.  Analysis

"The purpose of a suppression hearing is 'to determine preliminary the admissibility of

---

[2] The Court's citation to the hearing transcript refers to the court reporter's original unedited version. Any final transcript may contain slightly different page and/or line numbers.

certain evidence allegedly obtained in violation of defendant's rights under the Fourth and Fifth Amendments." *United States v. Maurek*, 131 F. Supp. 3d 1258, 1261-62 (W.D. Okla. 2015) (quoting *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir. 1982)). "The proper inquiry is whether [the challenged action] violated the Fourth Amendment rights of [the] criminal defendant making the challenge." *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (quoting *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989)). "The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (quoting *Allen*, 235 F.3d at 489). The United States bears the burden of proof by the preponderance of the evidence to show that the challenged action did not violate the defendant's Fourth Amendment rights. *United States v. Matlock*, 415 U.S. 164, 177 (1974). Finally, the Court views the evidence in the light most favorable to the United States. *See, e.g., United States v. Turner*, 2013 WL 5727404, at *9 (D. Kan.) ("While the Court is cognizant that it must view the facts in the light most favorable to the Government, it may not draw inferences that are not supported by the record, nor accept facts that are contrary to the record."); *United States v. Ortega*, 2012 WL 12894242, at *4 (S.D. Fla.) ("viewing the facts adduced at the suppression hearing in the light most favorable to the government….").

> A. *Fourth Amendment Standard: Terry and Reasonable Suspicion to Stop and Question Mr. Romero*

The Fourth Amendment guarantees individuals the right to be free from unreasonable searches and seizures of their person and property. U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (internal quotation marks omitted). When law enforcement officers violate the commands of the Fourth Amendment the exclusionary rule applies which "forbids the use of

improperly obtained evidence at trial." *Herring v. United States.*, 555 U.S. 135, 139 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 398 (1914)). The exclusionary rule "is designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

"The Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (citing *United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir. 1984)). "Consensual encounters are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing." *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497-98 (1983)).

"An investigative detention, which is also referred to as a *Terry* stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause." *Id.* (citing *United States v. Espinosa*, 782 F.2d 888, 890 (10th Cir. 1986)). Rather, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "A determination of reasonable suspicion is based on 'an objective standard taking the totality of the circumstances and information available to the officers into account.'" *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007) (quoting *United States v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004)). The totality of the circumstances includes "taking into account an officer's reasonable inferences based on training, experience, and common sense." *Id.* at 1083 (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

6

Applying the foregoing standard, the Court concludes Officer Dollar had reasonable suspicion of criminal activity at the church. Specifically, Officer Dollar observed a male peering into the window of the Emmanuel Lutheran Church. He had patrolled the area including the church for over two-and-a-half years and had driven by the church 50 to 75 times a week. Based on his experience and familiarity with this church, the time of day and the fact there were no services, it was unusual to see someone peering into the window. Moreover, Officer Dollar testified, "There had been other incidences at another church and vandalism had occurred," "[s]o it drew my attention as to why there would be somebody at church with no services that was going on peaking [sic] through a window." Tr. at 22. This testimony is corroborated with Government Exhibit 2, a copy of an e-mail message to LCPD officers notifying them of vandalism at a nearby church several days before. As a result, Officer Dollar acted reasonably to investigate further, including his attempt to question Mr. Romero.

In support of his motion to suppress, Mr. Romero argues that, once Officer Dollar noticed him simply charging his phone and filling his water bottle, any reasonable suspicion of a crime was dispelled. The Court would agree with Mr. Romero if Officer Dollar's suspicion was based only on his observation of Mr. Romero at the church simply filling a water bottle and charging a telephone, and did not include seeing Mr. Romero peering into the church window or Officer Dollar's knowledge of prior church burglaries. That, however, is not the case here. As discussed above, there were other factors and observations together that contributed to Officer Dollar's reasonable suspicion. Based on the totality of circumstances, Officer Dollar acted reasonably to investigate further and to question Mr. Romero. As discussed below, the circumstances, nonetheless, quickly developed on a different trajectory from those relating to an initial investigation of a possible burglary to one of determining whether Mr. Romero possessed a

7

weapon.

## B. Authority to Perform Pat Down Search

"A pat down is a search and therefore must be reasonable." *United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir. 2014) (citing *Terry*, 392 U.S. at 19). "Pat-down searches are constitutional when an officer has reasonable suspicion that an individual is 'armed and dangerous.'" *Id*. (citing *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007). "The primary justification for a pat-down search is an officer's concern 'that [his or her] safety or that of others was in danger.'" *Id*. (quoting *Terry*, 392 U.S. at 27). "The reasonable suspicion needed to justify a pat-down search 'need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *Id*. (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002). The reasonable suspicion need only meet a

> *minimum level of objective justification*. [The] analysis does not consider each of an officer's observations in isolation, but rather is 'based on the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense. The totality of the circumstances tests looks at the officer's knowledge and observations as well as the circumstances in which the officer is working.

*Id*. at 1143 (internal quotations and citations omitted) (emphasis added).

As explained above, Officer Dollar had reasonable suspicion that criminal activity was afoot. He was justified in investigating further, and in doing so, encountered Mr. Romero at the church. As a result, he preliminarily asked Mr. Romero if Mr. Romero had any weapons and, in fact, Officer Dollar saw what looked like a knife pocket clip on Mr. Romero's hip and a bulge on Mr. Romero's arm that could have been a knife. The evidence indicates Mr. Romero's verbal response included, "No, I got a --." Government Exhibit 1, (Doc. 43 at 2)**.** However, the audio-video evidence is clear that Mr. Romero simultaneously reached for his pocket when he made that response. Government Exhibit 1. Indeed, Officer Dollar recalled in testimony observing

Mr. Romero reach toward the area where he noted a pocket clip consistent with a pocket knife, and he interpreted Mr. Romero's movement as a response to the question about weapons. A reasonable officer in these circumstances would interpret the movement to be an affirmative response to the question of whether Mr. Romero had a weapon. *Garcia*, 751 F.3d at 1142 (stating, "Even when an officer had limited 'specific information leading him to believe that [an individual] was armed or dangerous' and no knowledge of the individual's having possessed a weapon, we have held that the officer's safety concern justified a pat down"). Indeed, Officer Dollar told Mr. Romero to not reach for anything, further indicating his safety concerns. Moreover, burglary is the sort of crime that by its nature involves a weapon. *See United States v. Barnett*, 505 F.3d 637, 640 (7th Cir. 2007) (citing *United States v. Brown*, 366 F.3d 456, 461 (7th Cir. 2004)) (noting burglary is "a crime normally and reasonably expected to involve a weapon"); *see also United States v. Snow*, 656 F.3d 498, 503 (7th Cir. 2011) ("Because the facts known to the officer supported a *Terry* stop to investigate whether he in fact had attempted a residential burglary, and because burglary is the type of offense that likely involves a weapon, [the officer's] decision to order [defendant] out of the truck for purposes of a protective frisk was reasonable despite the absence of additional facts suggesting that [defendant] in particular might be armed."); *United States v. Vickers*, 540 F.3d 356, 362 (5th Cir. 2008) (upholding pat-down by officer of defendant matching description of suspect provided by 911 caller and near scene of burglary). Therefore, Officer Dollar acted reasonably when he ordered Mr. Romero to turn towards the wall for a pat down search. *United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994) (stating *Terry* stop justified when "involving only a brief, non-intrusive detention and frisk for weapons when officers have a reasonable suspicion that the defendant has committed a crime or is about to do so").

9

Mr. Romero cites *United States v. House,* 463 Fed.Appx. 783, 787 (10th Cir. 2012), to argue Officer Dollar must have reasonably suspected he was both armed *and* dangerous to justify the pat down search. Tr. at 74-75. Mr. Romero further argues there was nothing about him or his conduct that would cause Officer Dollar to reasonably suspect he was armed and dangerous and that possession of a pocket knife by itself does not justify the pat down search. *Id*. at 76. Indeed, the Court in *House* agreed, "before an officer effectuates a limited frisk for weapons . . . the officer must have a reasonable belief that the suspect is both (1) armed, and (2) dangerous. We consider each requirement to determine if the frisk [ ] was lawful." *Id*. at 788 (quoting *United States v. Johnson*, 246 Fed.Appx. 982, 988 (6th Cir. 2007) (stating, "Being armed does not ineluctably equate with dangerousness"). The Court determined that while Mr. House was armed, there was nothing else that warranted a frisk. *Id*. at 789 (stating, "A folded knife in a person's pocket hardly poses a danger to an armed officer standing six to eight feet away"). But while there are remarkable similarities between the facts in *House* and those confronting Officer Dollar, there also are determinative distinctions. In that case, the majority held there was nothing dangerous about Mr. House to justify a pat-down search. The Court determined the encounter between Mr. House and the officer was too remote to a reported burglary, and that although the officer reasonably suspected the person was armed, "there was no indication that he was presently dangerous." *Id*. at 788, 789 (stating "based on a hunch that a citizen walking down the street is illegally carrying a firearm, *without more*, serves to erode the precious protections of the Second and Fourth Amendments" ) (emphasis added).

Here, considering Officer Dollar was investigating a possible burglary, Officer Dollar possessed more than just a reasonable suspicion that Mr. Romero was armed but also that he was dangerous. For several reasons, it was reasonable under the circumstances for Officer Dollar to

10

address that suspicion before questioning Mr. Romero further about a possible burglary. *Garcia*, 751 F.3d at 1143-47 (discussing factors justifying officer's safety concerns to warrant pat-down search). First, based on Mr. Romero's action in response to Officer Dollar's question about weapons, i.e., reaching to his waist area where a pocket clip, consistent with a knife clip, was visible, Officer Dollar reasonably believed Mr. Romero had a weapon.

Second, Officer Dollar noticed what appeared to be a knife in the bicep region of Mr. Romero's body, stating he "was not 100 percent certain, but I did think that it was a knife just based on the outline of it and the way it imprinted on his clothing." Tr. at 26-27. *Garcia*, 751 F.3d at 1144 (stating officer need not be "absolutely certain that an individual is armed; [rather] the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger").

Third, Officer Dollar reasonably suspected Mr. Romero may be about to commit a burglary, if he had not already perpetrated the crime. This suspicion is based on Officer Dollar's observation that Mr. Romero was peering into the church as well as his familiarity with the location and previous acts of burglary and vandalism at area churches. Moreover, burglary is the type of crime that by its nature would cause Officer Dollar to reasonably suspect Mr. Romero may be armed and potentially dangerous. *Id*. at 787 (discussing other types of offenses that would support reasonable suspicion that person may be armed and dangerous); *see also Barnett*, 505 F.3d at 640 (stating burglary is "a crime normally and reasonably expected to involve a weapon"); *Vickers*, 540 F.3d at 362 (upholding pat down of person matching description of suspect by 911 caller and near scene of burglary). Based on the totality of the circumstances and viewing the facts in the light most favorable to the United States, Officer Dollar had at least a minimum level of objective justification to meet the reasonable suspicion standard for

conducting a pat down for weapons.

### C. Probable Cause to Arrest[3]

#### 1. Resisting an Officer in Violation of NMSA 1978, Section 30-22-1(D)[4]

"An officer may make an arrest without a warrant if the officer has probable cause to believe a crime has been committed by the arrestee." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City & Cnty. of Denver, Colo.*, 854 F.2d 1206, 1210 (10th Cir. 1988) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Under NMSA 1978, § 30-22-1(D) (Cum. Supp. 2015), "[r]esisting, evading or obstructing an officer consists of ... resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties." This section includes "direct engagement with an officer" or "avoiding doing something required, including refusing to comply with an officer's orders." *State v. Jiminez*, 2017-NMCA-039, ¶¶ 38-39, 392 P.3d 668; *see State v. Cotton*, 2011-NMCA-

---

[3] At the hearing, the United States abandoned its argument that Officer Dollar had probable cause to arrest Mr. Romero for an earlier crime of larceny of cameras attached to a nearby church. Tr. at 5.

[4] Neither party argues, nor does this Court determine, whether the firearm inevitably would have been discovered had Mr. Romero initially complied with Officer Dollar's command to submit to a pat down search. "The United States Supreme Court has recognized 'the ultimate or inevitable discovery exception to the exclusionary rule,' which applies when 'the prosecution can establish by the preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ....'" *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). The firearm, in this case, was located in Mr. Romero's backpack, on his back, when Officer Dollar performed the pat down. *See, e.g.*, *United States v. Garcia*, 909 F.2d 389, 391-392 (9th Cir. 1990) (holding frisk by officers of bag was justified because bag was "hiding-place where a weapon could be concealed").

096, ¶¶ 23-24, 150 N.M. 583 (concluding ample evidence supported conviction that defendant resisted or abused officer by using legs and head to prevent officers from closing police car door); *see also State v. Diaz*, 1995-NMCA-137, ¶¶ 4, 16-23, 121 N.M. 28 (holding evidence supported conviction under Section 30-22-1(D) when defendant did not obey officer's order to drop knife); *City of Espanola v. Archuleta*, 2010 WL 3997984, at *4 (N.M. App.) ("'[R]esisting' as that term is used in Statute Section 30-22-1(D), includes a defendant's failure to follow police orders."). In construing the resisting statute, the Tenth Circuit has "found an arrest 'justified' under *various* provisions of the resisting statute where the defendant has refused to comply with an officer's command, but *only* under circumstances where the command precipitating the arrest was 'actually lawful.'" *Youbyoung Park v. Gaitan*, 680 Fed. Appx. 724, 733 (10th Cir. 2017) (quoting *Storey v. Taylor*, 696 F.3d 987, 993 n.6 (10th Cir. 2012)); *see also Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012) ("Because we hold Defendants lacked reasonable suspicion to detain Plaintiff for the vandalism, Defendants lacked probable cause to arrest Plaintiff for flight or evasion under [Section] 30-22-1(B), thereby violating Plaintiff's constitutional right to be free from unlawful arrest.").

Officer Dollar had probable cause to believe Mr. Romero committed the crime of resisting an officer in violation of Section 30-22-1(D). Officer Dollar ordered Mr. Romero to place his items on the ground and turn towards the church wall for a pat down. Government Exhibit 1 at 01:00. This order was lawful because, as discussed, Officer Dollar had reasonable suspicion to believe that Mr. Romero was armed and dangerous and, as a result, Officer Dollar could reasonably conduct a pat down search. Officer Dollar had asked Mr. Romero if he had a weapon, and Mr. Romero motioned towards his right pocket. Meanwhile, Mr. Romero held a water bottle in one hand and a cell phone in the other. Mr. Romero took a few steps as if to

comply. But instead of complying, Mr. Romero turned around and faced Officer Dollar. *Id.* at 01:05. Officer Dollar then repeated his order that Mr. Romero place his items on the ground, *id.* at 01:08, to which Mr. Romero again failed to comply and, instead, asked if he was going to get a ticket. *Id.* at 01:18. Mr. Romero still had not put his items on the ground nor had he placed his hands on the wall for a pat down. *Id.* As a result, Officer Dollar drew his taser and aimed it at Mr. Romero, at which point, Mr. Romero placed his items on the ground. *Id.* at 01:23-01:26. Officer Dollar, still aiming his taser, instructed Mr. Romero to place his hands on the wall. *Id.* at 01:29. Yet again, instead of placing his hands on the wall, Mr. Romero pulled on the straps of his backpack, and then turned towards Officer Dollar. *Id.* at 01:31-01:34. Officer Dollar warned Mr. Romero he could either go to the ground or comply. *Id.* at 01:40. Mr. Romero then went to the ground. *Id.* at 01:44. Because Mr. Romero did not comply with Officer Dollar's orders to place his water bottle, cell phone, and cell phone charger on the ground, and place his hands on the wall, Officer Dollar had probable cause to arrest Mr. Romero for refusing to comply with a lawful order in violation of Section 30-22-1(D).

### 2. *Reasonable Mistake of Law*

Assuming *arguendo*, that Officer Dollar did not have probable cause to arrest Mr. Romero for refusing to comply with a lawful order in violation of Section 30-22-1(D), Officer Dollar, nonetheless, acted reasonably under the Fourth Amendment. In *Heien v. North Carolina*, the United States Supreme Court held that "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." 135 S. Ct. 530, 536 (2014). The United States Supreme Court noted that "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* (quoting *Brinegar v. United*

*States*, 338 U.S. 160, 176 (1949)). The mistake of law analysis can apply when a case involves an ambiguous statute. *See id.* (Kagan, J., concurring) ("the test is satisfied [only] when the law at issue is so doubtful in construction that a reasonable judge could agree with the officer's view."); *United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016) (noting statute in case unambiguous "and *Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute." (emphasis in original)).

In *United States v. Diaz*, the Second Circuit extended the mistake of law analysis to a probable cause determination. 854 F.3d 197, 203-205 (2d Cir. 2017) (holding "public place" under New York law ambiguous and officer acted with reasonable interpretation of law in effecting arrest). The Court finds *Diaz* persuasive and for at least two reasons, finds Officer Dollar acted reasonably when he concluded Mr. Romero's multiple refusals to comply with his lawful command violated Section 30-22-1(D). First, the case law construing Section 30-22-1(D) does not provide clear guidance for a reasonably prudent officer in circumstances such as this to determine whether an individual is resisting in violation of law or simply demonstrating reluctance to eventually comply. Second, the circumstances between Officer Dollar and Mr. Romero developed quickly. Indeed, only approximately 60 seconds elapsed between the time Officer Dollar identified himself until Mr. Romero finally complied with Officer Dollar's command by going to the ground.[5] Government Exhibit 1 at 00:44-01:44. Thus, Officer Dollar had only moments to consider whether Mr. Romero was violating the statute, and under these

---

[5] The Court has considered Officer Dollar's own conduct and whether it amounted to an unreasonable escalation of events. As explained above, the Court concludes Officer Dollar's actions were reasonable in view of the totality of circumstances. Moreover, Mr. Romero has not pointed to, nor has the Court found, any cases that would support an opposite conclusion under these circumstances.

15

circumstances, acted reasonably in determining Mr. Romero was resisting in violation of the statute.

### 3. *Larceny of Water in Violation of NMSA 1978, Section 30-16-1(B)*

The United States argues that an alternative basis for Mr. Romero's arrest was larceny of water, a violation of NMSA 1978, Section 30-16-1(B) (Cum. Supp. 2015). Section 30-16-1(A) defines larceny as "the stealing of anything of value that belongs to another." "Whoever commits larceny when the value of the property stolen is two hundred fifty dollars ($250) or less is guilty of a petty misdemeanor." *Id.* The United States conceded this violation likely is a petty misdemeanor involving no jail time but, even so, there is no *de minimus* exception for the value of stolen property. Tr. at 71-72. The Court is not persuaded that a reasonable officer in these circumstances would have observed evidence that Mr. Romero did not have permission to take water. Therefore, the Court concludes Officer Dollar did not have probable cause to arrest Mr. Romero for larceny of water in violation of Section 30-16-1(B).

For the foregoing reasons, the Court denies Mr. Romero's motion to suppress (Doc. 20).

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE